## Williams Appeal

*Robert Banks*, for appellant.

*William C. Sennett, Special Assistant Attorney General*, for Commonwealth.

RODGERS, P. J., September 1, 1965.—This matter is before the court on appeal from an order of the Pennsylvania Liquor Control Board, dated December 8, 1964, whereby appellant's license was suspended for a period of 30 days, commencing January 5, 1965, "and thereafter until proof is furnished that there is a sufficient supply of food and that the premises are maintained in a sanitary condition".

The board made the following findings of fact:

"1. The licensee, his servants, agents or employees sold alcoholic beverages on credit on February 22, 1964.

"2. The licensee, his servants, agents or employees offered and/or gave inducements to consumer trade to promote the sale of alcoholic beverages sold by the licensee on February 22, 1964.

"3. The licensed establishment operated by the licensee was not a bona fide hotel where the public may, for consideration, obtain sleeping accommodations and meals in that there was an insufficient supply of food on the licensed premises.

"4. The licensed establishment operated by the licensee was maintained in an insanitary condition on February 27, 1964."

Appellant, in effect, admitted selling on credit. He was asked to comment on a former question about "running a bill". He answered:

"I hope he didn't think it was credit because I never give no credit. I always loan somebody money and if they wanted to have a drink at my place, it's well and good. I have lived in Greenville, in the town, 40 years and I know the people."

The recipient of these loans testified as follows:

"Q. Now, did you borrow money from John Williams while you were in the Adams Hotel at the bar?

"A. Well, not just exactly at the bar. I would call him aside and ask him for it.

"Q. In the barroom?

"A. Yes.

"Q. While you were a patron there purchasing liquor and food?

"A. Usually.

"Q. In other words, did you borrow the money to use to pay for the beer or anything that you were going to drink there?

"A. Usually.

"Q. And, you used the money to buy food and beverages at the bar, is that correct?

"A. Usually. I had an idea what I was going to use

it for. That is what I asked him for and that is what I got."

This is clearly selling on credit.

The Liquor Code of April 12, 1951, P. L. 90, makes it unlawful for any licensee to give anything of value as a premium or present to induce the purchase of liquor or malt or brewed beverages. The Commonwealth claims that the loans made by the licensee in this case are such inducements. We cannot agree. We have already sustained the board's position that these "loans" were, in fact, sales on credit. It is not reasonable for us to hold that they are one thing in one context and a different one in another.

The Commonwealth has alleged that there was an insufficient supply of food on the premises at the time of the officers' inspection. The testimony of the Commonwealth officers indicates that they found only a can of sardines and several small cans of vegetables in the kitchen at the time of their inspection. They also testified that the dishes and the stove were dusty, dirty and insanitary. The licensee testified that at the time of the inspection, the premises were being painted and that the food, other than that described by the Commonwealth, was being stored in a deep freeze in the basement. The licensee testified that as soon as the painting was completed, the premises were cleaned and the food was returned to the kitchen. There is nothing in this case, as the court found in Albud, Incorporated Liquor License Case, 188 Pa. Superior, 635, to indicate that this was not, in fact, a bona fide restaurant. In fact, the evidence is to the contrary.

The Commonwealth made its inspection on February 27, 1964, and did not return to examine the premises until December 17, 1964, when they found the place cleaned, painted and with sufficient food. Pictures taken on the Sunday following February 27, 1964, evidenced the fact that the kitchen was in good repair

at that time. The lack of sufficient food and the insanitary condition of the kitchen was a temporary situation growing out of the redecorating of the premises. We find that this condition was remedied on or about the first day of March 1964.

We make the following findings of fact:

1. The licensee, his servants, agents or employes sold alcoholic beverages on credit on February 22, 1964.

2. The licensee, his servants, agents or employes did not offer or give inducements to consumer trade to promote the sale of alcoholic beverages sold by the licensee on February 22, 1964.

3. The lack of sufficient food in the kitchen for service to the public on February 22, 1964, was a temporary condition and was not in violation of the rules and regulations of the board or in violation of the statute.

4. The licensed establishment operated by plaintiff was being painted on February 27, 1964, and the disorganized appearance of the premises on that date was a temporary condition promptly remedied by the licensee on the completion of the renovation.

1. The court has reversed three of the board's findings of fact and sustained one of the board's findings of fact. Under these circumstances, the court has the discretion and duty to consider the propriety of the original ruling of the board with reference to a suspension: Berarducci Liquor License Case, 195 Pa. Superior Ct. 524.

ORDER

And now, September 1, 1965, the order of the Pennsylvania Liquor Control Board suspending the license of John Williams, Adams Hotel, 106 Main Street, Greenville, Pa., is vacated.

The court hereby suspends the license of John Williams, Adams Hotel, 106 Main Street, Greenville, Pa., for a period of 10 days. The matter is remanded to the Pennsylvania Liquor Control Board for determination of the time of suspension.

EXCEPTION

And now, September 1, 1965, an exception to the above order is granted for the Pennsylvania Liquor Control Board.